GreeN, J.
delivered the opinion of the court.
This is an action brought by the defendant in error against Christopher Strong and Abiram Caldwell, as justices of Dickson county court, in 1818, for, while acting as sucb justices, appointing Sterling Brewer guardian for said Harris, who was an infant, and failing to take bond and security for the performance of the trust, the estate having, thereby, been converted to his own use. The jury found a verdict for Caldwell, and against Strong, who appealed to this court. On the trial of the cause in the circuit court, the plaintiff introduced a copy of the minutes oF each day’s proceedings of the county court of Dickson county, at its January term, 1818, from which it appeared, that Sterling Brewer was appointed guardian of the plaintiff on Thursday of the term.
*452 The defendant Caldwell was present, presiding as one of the justices of the court, when it was opened on the morning of that day, having signed the minutes of the preceding day, and the other defendant, Strong, was presentwhen the court adjourned that day, until court in course, he having signed the minutes of that day.
The defendants introduced Richard Batson, and proved by him that he was formerly sheriff of Dickson county, lived near Charlotte in 1819, and that he was well acquainted with Field Farrar, who was then the Clerk of the county court. They then asked the witness if he were acquainted with said Farrar’s habits in keeping the records; whether or not he was in the habit of putting down names of the justices, at the commencement of the court who in reality were not present. To this plaintiff objected, and the court sustained the objection. They then offered to prove by said witness, that Farrar was negligent in getting up his minutes, and that he frequently called upon any justice he could find to sign them, after he had written them up. The plaintiff objected to the evidence, and the court sustained the objection, to which the defendant excepted.
The circuit judge delivered a very lucid charge to the jury, in which among other things he said:
“That the record of the county court, produced as evidence, whereby said appointment was made, was notconclusive or pri-ma facia evidence, that the defendants or either of them, were not at the time of making said appointment, presiding and holding said court, but it establishes the fact only that the defendant Caldwell was present at the opening of the court, and that defendant Strong signed the minutes. That they might take these two facts in connection with the rest of the testimony, from all of which they might or they might not infer the defendants, or either, were present and presiding at the time the appointment was made. That defendant Strong by having signed the minutes of the court was not estopped from denying that he was present and presiding at the time of making the appointment.”
We think there is no error in any part of the charge of the court, and we give our unqualified sanction to the part above quoted, as containing a clear and just exposition of the weight *453 ancl influence, which the records of the county court ought to have in the case. Unquestionably these records establish the facts they assert, and therefore that Caldwell was present, presiding at the opening of the court, and that Strong was present, presiding when it adjourned, are facts, which cannot be controverted.
But whether both or either of them, was present at the time any particular order was made during the day, the record does not assert, and consequently it must be determined by all the facts and circumstances in the case. Their presence at the particular periods the records establish, are facts which were properly left to the jury, as constituting circumstantial evidence in the case.
These circumstances might be strengthened or weakened by other proof. With this view, the defendants offered to prove by Batson that Farrar was negligent in getting up his minutes, and that he frequently called upon any justice he could find to sign them after he had written them up. This testimony was rejected by the court, and we think improperly.
The issue was, whether Strong was present, presiding at the time the order in question was made. He told the jury, that the fact that he was present and signed the minutes, did not estop him from denying that he was present, and presiding, at the time of making said appointment, and that his presence at the adjournment of the court, was not prima facie evidence that he assisted in making the appointment. This proposition being correct, we do not perceive upon what principle the. evidence in question was rejected.
The order, appointing Brewer guardian, stands first upon the record after the order announcing the opening of the court. If the clerk was in the habit of writing the orders of the court, during the progress of business, and in the order the court had acted, this practice would constitute afact, tending to prove that Caldwell was present when the order was made, and that Strong was not.
" So if he was in the habit of taking short memoranda of the orders which were made, and then, after the court had finished the business, writing out these orders in his record book; and *454 when he had written up the minutes, notifying any justice he might see to attend and hear the minutes read and sign them; it seems to us that such evidence, would weaken the influence deducible from his signature to the minutes, that Strong was present, when the order appointing this guardian was made. The quorum court was sitting. Five justices had been elected,* whose peculiar duty it was to hold this court. Strong was not one of the five.
Although he might lawfully participate in making such an order as this, on the day that this appointment was made, yet the probabilities that he did not preside, and transact business during that day, are weakened by the fact that the law made it the duty of others. If under these circumstances it were proved that on the last day of the court, justices of the quorum who lived at a distance from the town, were in the habit of leaving the bench, while the clerk was writing up the minutes, and when completed the clerk was in the habit of soliciting the attendance of others, not of the quorum, to sign the minutes, it seems to us that such evidence, would not only be relevant but highly important as- furnishing probable evidence of the reason why Strong’s name is found subscribed to the minutes of that day, and consequently weaken the evidence arising from his signature to the minutes, of his presence at the time the order was made. This evidence does not contradict any thing stated in the record as a fact; it only opposes a conclusion of fact, which the record tends, as circumstantial evidence, to establish. In this view it is competent, upon the principle so correctly stated by the court in the charge .to the jury.
The evidence of Batson, that was offered to prove that.the clerk was in the habit of stating in the record the names of justices as present at the commencement of the court, who really were not there, was properly rejected. The object and effect of such evidence would be, to contradict the record. It stated as a fact that Caldwell was present at the commencement of the court that day. That fact so established cannot be contradicted, either by direct proof, or circumstantial evidence.
The counsel for the defendant in error insist, that Strong *455 ought tobe responsible for the orders that were made that day, because he heard them read before he signed them.
The act upon which this suit is brought (1762, ch. 5, sec. 5,) makes “the justice or justices appointing such guardian liable.” It must therefore be made to appear, that the justices sought to be charged, actually participated in the appointment.
It never could have been intended, that the justices who heard the minutes read, before they were signed, should inspect every bond that had been executed the preceding day, and ascertain whether the security was sufficient.
In many instances they could not ascertain how that fact was. On the first day of the county court as then organized, a great many guardians might be appointed, and bond and security given, and guardians and securities have gone home, to distant parts of the county. When the minutes were read the •next morning, the justices present might not know the securities, and could have. no means of testing their solvency. It would be exceedingly unreasonable to hold them responsible for an act in relation to which they had no agency. The parties are not responsible under the law unless they were present, presiding at the time the appointment was made.
Let the judgment be reversed and a new trial awarded.